# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| **GLEN K. ALLEN,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:  1:18-cv-03781-CCB** |
| **HEIDI BEIRICH,** *et al.*, | |
| **Defendants.** | |

## SPLC DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

BALLARD SPAHR LLP

Chad R. Bowman (Fed. Bar No. 18305)
Elisabeth R. Connell (Fed. Bar No. 19480)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
*bowmanchad@ballardspahr.com*
*connelle@ballardspahr.com*

*Counsel for Defendants*

Date: March 4, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

RELEVANT BACKGROUND ............................................................................. 3

I.      PLAINTIFF GLEN K. ALLEN ................................................................. 3

II.     THE SOUTHERN POVERTY LAW CENTER AND BEIRICH ....................... 3

III.    THE RELEVANT SPLC PUBLICATIONS .................................................. 4

        A.      Chaos at the Compound ................................................................. 4

        B.      The Article ................................................................................... 5

        C.      The Hate Map and Hate Map Flyer ................................................. 7

IV.     ALLEN'S COMPLAINT ........................................................................... 8

ARGUMENT ................................................................................................... 9

I.      BECAUSE ALLEN'S ALLEGED HARM FLOWS FROM NON-
        ACTIONABLE SPEECH, HIS CLAIMS MUST BE DISMISSED ................. 10

        A.      Litigants Cannot Evade Constitutional Limitations on Speech Claims
                by Rebranding Defamation Claims as Alternate Torts ...................... 10

        B.      Allen's Defamation Claim Fails as a Matter of Law ........................ 13

                1.      Any Defamation Claim Based on the Article is Time-Barred ... 13

                2.      Any Defamation Claims—on the Article or Otherwise—Fail
                        on Their Merits ................................................................... 14

II.     THE NON-DEFAMATION CLAIMS FAIL AS A MATTER OF LAW FOR
        ADDITIONAL REASONS AS WELL ....................................................... 17

        A.      Allen Is Barred From Challenging SPLC's Nonprofit Status ............. 17

        B.      Allen Fails to State a Claim Under the RICO Act ........................... 21

                1.      Plaintiff's RICO Claim is a Thinly Disguised Defamation
                        Claim and Defamation is Not a Predicate Act Under RICO ...... 22

2.      Allen Fails to Show the Predicate Acts Were the Proximate
        Cause of His Alleged Injury ...................................................................25

C.      The Remaining Tort Claims Fail ........................................................................27

        1.      Tortious Interference with Prospective Advantage (Count IV)................27

        2.      Tortious Interference with Contractual Relations (Count V)
                and Aiding and Abetting a Breach of Contract (Count IX)......................28

        3.      Negligent Training and Supervision (Count VI) ......................................29

        4.      Restitution/Unjust Enrichment (Count VII)..............................................30

CONCLUSION...................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abulhawa v. Department of the Treasury*,
    No. 17-5158, 2018 WL 3446699 (D.C. Cir. June 19, 2018) ..................................................20

*Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*,
    801 F. Supp. 2d 383 (D. Md. 2011) ........................................................................................1

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ...............................................................................................................26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................9

*Baker v. Family Credit Counseling Corp.*,
    440 F. Supp. 2d 392 (E.D. Pa. 2006) ....................................................................................18

*Baltimore Sports & Social Club, Inc. v. Sport & Social, LLC*,
    228 F. Supp. 3d 544 (D. Md. 2017) .......................................................................................15

*Barber v. IRS*,
    Civil No. Y-96-2366, 1997 WL 151996 (D. Md. Jan. 7, 1997) .......................................18, 19

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ..............................................................................................11, 12, 22, 28

*Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union,
    Local 655*, 39 F.3d 191 (8th Cir. 1994) ................................................................................10

*Biospherics, Inc. v. Forbes, Inc.*,
    151 F.3d 180 (4th Cir. 1998) .................................................................................................10

*Bourgeois v. Live Nation Entertainment, Inc.*,
    3 F. Supp. 3d 423 (D. Md. 2014) ..........................................................................................21

*Buckley v. Littell*,
    539 F.2d 882 (2d Cir. 1976).....................................................................................................14

*Campbell v. Lyon*,
    26 F. App'x 183 (4th Cir. 2001) ............................................................................................28

*In Re Carol Vericker*,
    446 F.2d 244 (2d Cir. 1971)....................................................................................................22

*Carter v. Aramark Sports & Entertainment Services, Inc.*,
    835 A.2d 262 (Md. Ct. Spec. App. 2001) ............................................................27

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ...................................................................10, 17

*Chovanes v. Thoroughbred Racing Association*,
    No. CIV. A. 99-185, 2001 WL 43780 (E.D. Pa. Jan. 18, 2001) ............................................25

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................................24

*Contes v. City of N.Y.*,
    No. 99 Civ. 1597(SAS), 1999 WL 500140 (S.D.N.Y. July 14, 1999) ...................................24

*Covino v. Hagemann*,
    627 N.Y.S.2d 894 (N.Y. Sup. Ct. 1995) .................................................................15

*Creed Taylor, Inc. v. CBS, Inc.*,
    718 F. Supp. 1171 (S.D.N.Y. 1989)......................................................................25

*Cullen v. Paine Webber Group, Inc.*,
    689 F. Supp. 269 (S.D.N.Y. 1988) ......................................................................24

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...................................................................24

*Desnick v. American Broadcasting Cos.*,
    44 F.3d 1345 (7th Cir. 1995) ...........................................................................11

*Edelman v. Croonquist*,
    No. 09-1938(MLC), 2010 WL 1816180 (D.N.J. May 4, 2010) ............................................14

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) .........................................................................2, 10

*Foretich v. Advance Magazine Publishers, Inc.*,
    765 F. Supp. 1099 (D.D.C. 1991) ......................................................................11

*Forte v. Jones*,
    No. 1:11-cv-0718 AWI BAM, 2013 WL 1164929 (E.D. Cal. Mar. 20, 2013).......................14

*Fulani v. Brady*,
    935 F.2d 1324 (D.C. Cir. 1991) .......................................................................20

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010).................................................................................25, 26

*Hill v. Cross Country Settlements, LLC.*,
   936 A.2d 343 (Md. 2007) ................................................................................30

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992)..................................................................................25, 26

*Hourani v. Mirtchev*,
   796 F.3d 1 (D.C. Cir. 2015) ...........................................................................23

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988)........................................................................................2, 10

*Interphase Garment Solutions, LLC v. Fox TV Stations, Inc.*,
   566 F. Supp. 2d 460 (D. Md. 2008) ..........................................................28, 29

*Jarvis v. Securitas Security Services USA*,
   Civil No. 11-cv-00654-AW, 2012 WL 527597 (D. Md. Feb. 16, 2012) ................29

*Jernryd v. Nilsson*,
   No. 84 C 7551, 1985 WL 3590 (N.D. Ill. Nov. 8, 1985) ..........................................24

*Kahl v. Bureau of National Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir. 2017) ...........................................................................9

*Khalaf v. Regan*,
   Civil No. 83-2963, 1985 WL 392 (D.D.C. Jan. 8, 1985).......................................20

*Kimberlin v. National Bloggers Club*,
   No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015).............................23

*Kimm v. Lee*,
   No. 04 Civ. 5724(HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005)...........23, 24, 25

*Lathrop v. Juneau & Associates, Inc.*,
   No. 03-CV-0194-DRH, 2005 WL 3797706 (S.D. Ill. Apr. 25, 2005)....................24

*Luy v. Baltimore Police Department*,
   326 F. Supp. 2d 682 (D. Md. 2004) ...................................................................1

*Mack v. Parker Jewish Institute for Health Care & Rehabilitation*,
   No. CV 14-1299, 2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014) ..........................23

*Manax v. McNamara*,
   660 F. Supp. 657 (W.D. Tex. 1987)....................................................................24

*Mansmann v. Smith*,
   No. CIV. A. 96-5768, 1997 WL 145009 (E.D. Pa. Mar. 21, 1997).......................24

*Marks v. City of Seattle*,
  No. C03-1701, 2003 WL 23024522 (W.D. Wash. Oct. 16, 2003) .........................................24

*Martin v. Brock*,
  No. 07C3154, 2007 WL 2122184 (N.D. Ill. July 19, 2007) ....................................................14

*Mayfield v. National Association for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ....................................................................................................9

*Medical Laboratory Management Consultants v. American Broadcasting Cos.*,
  30 F. Supp. 2d 1182 (D. Ariz. 1998) .......................................................................................11

*Michalak v. Edwards*,
  124 F.3d 198, 1997 WL 561424 (6th Cir. Sept. 9, 1997) ........................................................23

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ............................................................................................................ *passim*

*Monterey Plaza Hotel Ltd. Partnership v. Local 483 of Hotel Employees &*
  *Restaurant Employees Union*, 215 F.3d 923 (9th Cir. 2000) ............................................22, 23

*Mount v. Ormand*,
  No. 91 Civ. 0125 (KTD), 1991 WL 191228 (S.D.N.Y. Sept. 18, 1991) ...............................24

*New York Times Co. v. United States*,
  403 U.S. 713 (1971) .................................................................................................................11

*Press v. United States*,
  Civil No. JKB-17-1667, 2018 WL 2237492 (D. Md. May 16, 2018) .....................................27

*Redmonds Enterprise, Inc. v. CSX Transportation, Inc.*,
  Civil No. CCB-16-3943, 2018 WL 3611049 (D. Md. July 27, 2018) .....................................14

*Reich v. Lopez*,
  38 F. Supp. 3d 436 (S.D.N.Y. 2014) ........................................................................................22

*Ritchie v. Sempra Energy*,
  Civil No. 10-cv-1513-CAB (KSC), 2013 WL 12171757
  (S.D. Cal. Oct. 15, 2013) .........................................................................................................24

*Roberts v. Perry*,
  No. 1:16-cv-34-FDW, 2017 WL 3277122 (W.D.N.C. Aug. 1, 2017) .......................................4

*Schnare v. Ziessow*,
  104 F. App'x 847 (4th Cir. 2004) ......................................................................................15, 16

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) .................................................................................................................21

*Segarra v. Messina*,
  153 F.R.D. 22 (N.D.N.Y. 1994).................................................................24

*Shulman v. Rosenberg*,
  No. 1683 Sept. Term 2016, 2017 WL 5172642, at *12 (Md. Ct. Spec. App.
  Nov. 8, 2017) ...............................................................................................16

*Simon v. Eastern Kentucky Welfare Rights Org.*,
  426 U.S. 26 (1976).......................................................................................20

*Squitieri v. Piedmont Airlines, Inc.*,
  No. 3:17CV441, 2018 WL 934829 (W.D.N.C. Feb. 16, 2018).....................14

*Standing Committee on Discipline v. Yagman*,
  55 F.3d 1430 (9th Cir. 1995) .......................................................................14

*Tani v. Washington Post*,
  Civil No. PJM 08-1130, 2009 WL 8652384 (D. Md. June 18, 2009) ..........13

*Toston v. Thurmer*,
  689 F.3d 828 (7th Cir. 2012) ..........................................................................3

*Unelko Corp. v. Rooney*,
  912 F.2d 1049 (9th Cir. 1990) ......................................................................11

*United States v. Ferriero*,
  866 F.3d 107 (3d Cir. 2017)..........................................................................22

*United States v. Pinson*,
  860 F.3d 152 (4th Cir. 2017) ........................................................................21

*Ward v. Zelikovsky*,
  643 A.2d 972 (N.J. 1994)..............................................................................15

*Wegner v. Wells Fargo Bank National Association*,
  Case No. 2:17-cv-1429 JCM (PAL), 2018 WL 3114528
  (D. Nev. June 25, 2018) ................................................................................23

*White v. Fraternal Order of Police*,
  909 F.2d 512 (D.C. Cir. 1990) ......................................................................17

*Williams v. Kanemaru*,
  309 P.3d 972, 2013 WL 4458887 (Haw. Ct. App. Aug. 20, 2013) ..............15

*Zimmerman v. Cambridge Credit Counseling Corp.*,
  409 F.3d 473 (1st Cir. 2005).........................................................................19

**Statutes**

18 U.S.C. § 201 ..................................................................................................................22

18 U.S.C. § 1961(1) ...........................................................................................................21

26 U.S.C. § 7428 ..........................................................................................................18, 19

28 U.S.C. § 2201 ................................................................................................................18

Md. Code Ann. Cts. & Jud. Proc. § 5-105 ....................................................................2, 13

**Other Authorities**

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017) ....................................10

Defendants the Southern Poverty Law Center and Heidi Beirich, the director of the

organization's Intelligence Project (together, "SPLC"), hereby move this Court pursuant to Rule

12(b)(6) to dismiss the Complaint, ECF. Dkt. 1 ("Compl.") with prejudice.[1]

## PRELIMINARY STATEMENT

The 197-paragraph, 81-page Complaint in this case reads like Plaintiff Glen K. Allen's

manifesto against SPLC, a nonprofit organization that monitors hate groups and engages in

public-interest litigation.  Despite the pleading's length, Allen's underlying grievance is simple:

SPLC published a news article about him in August 2016.  Compl. ¶ 76; *see also* Heidi Beirich,

*Neo-Nazi Lawyer Represents Baltimore in Suit Over Wrongful Arrest and 19-Year Imprisonment*

*of Black Man*, SPLC: Hatewatch (Aug. 17, 2016), *available at* https://www.splcenter.org/

hatewatch/2016/08/17/neo-nazi-lawyer-represents-baltimore-suit-over-wrongful-arrest-and-19-

year-imprisonment ("the Article").[2]  At that time, Allen worked as an attorney with the

Baltimore City Law Department, and the Article disclosed his history of ties to a neo-Nazi

organization and raised questions about his hiring at a time when the City was under serious

criticism for its approach to civil rights.  *Id.*  City officials then investigated Allen and terminated

---

[1] A third defendant, former SPLC employee Mark Potok, is separately moving to dismiss for lack of personal jurisdiction because he is not a resident of Maryland and had nothing to do with reporting or preparing the publications at issue in this lawsuit.

[2] A copy of the Article is attached as Exhibit B, and is properly considered by the Court.  "When a court considers a motion to dismiss, it may consider documents not attached to the complaint, without converting a motion to dismiss into one for summary judgment, 'if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'"  *Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 394 n.3 (D. Md. 2011) (quoting *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009)); *see also Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004) (considering on a motion to dismiss documents containing allegedly defamatory statements at issue relied upon by plaintiff but not attached to the complaint), *aff'd*, 120 F. App'x 465 (4th Cir. 2005).

his contract.  Compl. ¶ 96.  In 2017, SPLC published a flyer in which it briefly reported on the Article and Allen's termination.  Compl. ¶ 84; Exhibit C (the "Hate Map flyer").[3]

The dispositive flaws in the Complaint are also straightforward.  Any defamation claim based on the Article is time-barred in light of Maryland's one-year statute of limitations for defamation claims.  Md. Code Ann. Cts. & Jud. Proc. § 5-105.  Moreover, Allen does not dispute the truth of the Article's underlying *facts*, which under the First Amendment forecloses any defamation claim.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990) (a statement on a matter of public concern "must be provable as false before there can be liability under state defamation law").  As a result, the Complaint seeks to recover for the alleged reputational harms from the Article by asserting a grab bag of statutory and tort claims relating to the reporting of the Article, a reference to the Article in the Hate Map flyer, and other SPLC speech unrelated to Allen.  *See generally* Compl.  This attempt to circumvent defamation law's limitations is improper.  The Supreme Court has directed that constitutional limits apply to *all* claims seeking to recover damages for reputational injury, as Allen's are, regardless of how the claims are styled.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-57 (1988); *see also Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiff could not "recover defamation-type damages under non-reputational tort claims, without satisfying the stricter (First Amendment) standards of a defamation claim" because "such an end-run around First Amendment strictures is foreclosed by *Hustler*").  Each count fails both as a defamation action in disguise and on its own merits.

---

[3] Like the other publications incorporated into the Complaint, the Hate Map flyer is properly considered by the Court on this motion.  *See supra* n.2.

Ultimately, there is no small irony that the Complaint casts Allen as a First Amendment victim, Compl. ¶ 88, tormented by the supposed "criminalization of mere thought," *id.* ¶ 87, even as he seeks damages in the millions of dollars, *ad damnum* clause at pp. 72, 73, 74, 75, 77, 78, 80, 81, for what is in essence a defamation claim over SPLC's constitutionally protected speech. This action should be dismissed.

## RELEVANT BACKGROUND

### I.      PLAINTIFF GLEN K. ALLEN

According to the allegations of the Complaint, Allen is an experienced litigation attorney who retired from private practice in December 2015 after a 27-year career in the Baltimore office of a national firm.  Compl. ¶ 45.  He then took a contract position with the City of Baltimore in February 2016, with the title of assistant City Solicitor.  *Id.* ¶¶ 51-52.  Among the cases he worked on during his short tenure was the defense of the City of Baltimore Police Department in a wrongful conviction claim.  *Id.* ¶ 53.  The city terminated his contract in August 2016, after publication of the Article.  *Id.* ¶ 96; *see also, e.g.*, Tom Jackman, *Baltimore terminates contract with government lawyer accused of past neo-Nazi ties*, Washington Post (Aug. 19, 2016), *available at* http://tinyurl.com/y3k63mzp.

### II.     THE SOUTHERN POVERTY LAW CENTER AND BEIRICH

Founded in 1971 in Montgomery, Alabama, SPLC is a leading non-profit organization dedicated to fighting hate and bigotry and to seeking justice for the most vulnerable members of society.  *See* https://www.splcenter.org/what-we-do.  In furtherance of that purpose, the SPLC is engaged in "monitoring 'hate groups.'"  Compl. ¶ 16; *see also, e.g.*, *Toston v. Thurmer*, 689 F.3d 828, 831 (7th Cir. 2012) (citing affidavit testimony that "[i]n the United States, [the] two main organizations that monitor intolerance and hate groups are the Anti–Defamation League (ADL)

3

and the Southern Poverty Law Center (SPLC)") (citation omitted); *Roberts v. Perry*, No. 1:16-cv-34-FDW, 2017 WL 3277122, at *6 (W.D.N.C. Aug. 1, 2017) (noting that SPLC "researches and tracks right-wing, extremist hate groups in America"), *aff'd*, 707 F. App'x 777 (4th Cir. 2017), *cert. denied sub nom. Roberts v. Hooks*, 138 S. Ct. 1997 (2018).

Beirich leads the SPLC's Intelligence Project.  Compl. ¶ 3.  The Intelligence Project researches, monitors, and publishes reports on organizations and individuals that the SPLC believes may be—or are—hate groups or extremists.  *See generally* https://www.splcenter.org/fighting-hate.  Among other things, the Intelligence Project publishes the *Hatewatch* blog and an annual Hate Map, reporting on groups and individuals that, in SPLC's opinion, espouse or support hatred or bigotry.  *See generally* https://www.splcenter.org/hatewatch.

## III.   THE RELEVANT SPLC PUBLICATIONS

### A.     Chaos at the Compound

In May 2015, SPLC published a news report about the National Alliance ("NA"), which is designated by SPLC as a neo-Nazi organization.  Compl. ¶ 60; *see also* Heidi Beirich, *Chaos at the Compound: Allegations of Embezzlement, Money Laundering and Tax Fraud Haunt the New Chairman of the National Alliance*, SPLC: Hatewatch (May 20, 2015), *available at* https://www.splcenter.org/hatewatch/2015/05/20/chaos-compound ("Chaos at the Compound").[4] According to Chaos at the Compound, an accountant named Randolph Dilloway hired to audit NA's books discovered a "prosecutable pattern of embezzlement and income tax fraud going back at least 15 years."  *Id.* at 2.  After an altercation with armed NA leadership, and fearing for his safety, he fled the organization with financial records and became a whistleblower to law

---

[4] A copy of Chaos at the Compound is attached as Exhibit A, and is properly considered by the Court given that it is incorporated into the Complaint.  *See supra* n.2.

enforcement authorities and to SPLC. *Id.* at 1. According to the allegations of the Complaint, Dilloway was an "ineffective and insubordinate" accountant, who became "aggressive and belligerent" with leadership (who never actually drew a firearm), and then stole and sold confidential NA documents. Compl. ¶¶ 54-59.

This difference in characterization is immaterial here. What is relevant to this lawsuit, and undisputed, is that SPLC received copies of certain National Alliance documents after Dilloway took them. *See* Compl. ¶ 60. Chaos at the Compound itself only mentioned Allen once, noting in passing that then-Chairman Will Williams "ultimately blamed longtime National Alliance lawyer Glen Allen for siding with [former Chairman Erich] Gliebe" in a dispute over control of the organization. *See* Chaos at the Compound at 14.

### B.     The Article

Although not technically the subject of a cause of action in the Complaint—likely because of the obvious time bar—the Article is nevertheless at the center of all of Allen's allegations of harm. *E.g.*, Compl. ¶ 76 (alleging that the Article "caused Allen to lose his position as an attorney at the Baltimore City Law Department, destroyed his future prospects of employment as an attorney, and ravaged his reputation as a competent and ethical attorney.").

Published on August 17, 2016, the Article opens by questioning why a man with ties to a neo-Nazi organization was defending Baltimore in a civil rights claim from an African-American man apparently convicted based on false evidence by police:

> Baltimore is at the epicenter of the national debate over police violence, particularly after last week's release of a Justice Department report documenting deep racial disparities in policing in the city. That makes it particularly surprising, if not bizarre, to find a well-known neo-Nazi lawyer serving in the city's Law Department and defending the Baltimore Police Department.

> Attorney Glen Keith Allen, 65, however, has a long history of supporting one of the most notorious hate groups in America, the neo-Nazi National Alliance (NA).
>
> The NA was founded by William Pierce, who wrote the novel that served as the blueprint for the 1995 Oklahoma City bombing. Allen is a longtime donor and member of the NA, and public documents identify him as such. Even so, he was recently hired as an employee by the Baltimore City Law Department and is now defending the city in a lawsuit alleging that police officers withheld and fabricated evidence to wrongfully arrest and convict an African-American man for a murder it appears he did not commit.

*See* Article at 1.  The text proceeds to describe Allen's ties with such organizations, including by showing images of National Alliance documents:  Allen "was a dues-paying member of the National Alliance for years" and "was also a subscriber to the NA's racist publications, purchased entrance to a Holocaust denial conference the group held and bought a Holocaust denial DVD the group sold."  *Id.* at 3-4 (Receipt for Holocaust Revisionist Conference: "GLEN ALLEN, thank you for your support and for contributing to a brighter future for our people!").  The Article notes that Allen was also identified, both online and in a letter from the organization's founder, as an attorney for the National Alliance.  *Id.* at 5.  The Article also reported, among other things, that public records showed Allen "made political contributions to a racist political party, the American Eagle Party (AEP) National Committee," run by a man who claimed that the September 11, 2001 terrorist attacks were the work of Israel, and that "Allen also appears to be an officer in the AEP."  *Id.* at 4-5.  Video of Allen's moderation of an AEP "debate on the dangers of vaccinations" was promoted on the "Stormfront" website—a site created by a KKK grand dragon and dubbed the "first major hate site on the Internet."  *See Stormfront: A History*, SPLC: Hatewatch (March 25, 2015), *available at* https://www.splcenter.org/hatewatch/2015/03/25/stormfront-history.  The Article closed where it began, by raising questions:

> Allen may well be a skillful attorney. But at a time when Baltimore and its
> police department are facing devastating criticism over their policing
> practices, and a crisis over their treatment of minority residents, the hiring
> of a known neo-Nazi to litigate for them surely raises questions.

*See* Article at 6.

The Complaint notably does not dispute any of the underlying *facts* in the Article
regarding Allen's ties to the referenced organizations.  Rather, it objects that Allen was not fairly
characterized as a "well known" neo-Nazi, Compl. ¶¶ 82-84; disputes the opinion that AEP was
"racist" because "there were no racial elements in the AEP's platform or membership criteria,"
*id.* ¶¶ 89-90; and complains that the Article was "one-sided" because it did not reference *pro
bono* work Allen had done over the years for African-Americans, *id.* ¶¶ 93-94 (alleging Article
"achieved its goal of dehumanizing Allen by omitting any facts suggesting that Allen, although a
fallible human being who has made mistakes, has redeemable qualities").

### C.     The Hate Map and Hate Map Flyer

Each year since 1990, the SPLC has published a census of hate groups operating within
the United States.  This "hate map" is the result of monitoring by analysts and researchers,
published annually in January or February.  *See Hate Map*, SPLC, *available at*
https://www.splcenter.org/hate-map.  SPLC defines hate groups as organizations that "have
beliefs or practices that attack or malign an entire class of people, typically for their immutable
characteristics."  *Id.*

In 2017, the SPLC also produced a two-page flyer, titled "White Supremacists Celebrate
Trump's Victory: SPLC Documented More Than 1,000 Hate Incidents After the Election" that
contained a smaller version of the 2016 hate map and additional information about SPLC's work.
Compl. ¶ 113; Exhibit C.  The first page of the document showed SPLC's map of the United
States, identifying the location of designated hate groups by category (Black Separatist, Ku Klux

Klan, Anti-Muslim, White Nationalist, Neo-Nazi, Racist Skinhead, Anti-LGBT, Neo-Confederate, Christian Identity, and General).  *Id.* at 1.  The second page summarized "SPLC's Hard-Hitting, Three-Point Strategy to Combat Hate Crimes & Extremists."  *Id.* at 2.  This included (1) "seeking justice," through public-interest litigation; (2) "teaching tolerance," through the distribution of educational materials; and (3) "fighting hate," by tracking and exposing hate groups.  One of the examples in the third category—"fighting hate"—referenced Allen:

> **EXPOSING RACISTS WHO INFILTRATE PUBLIC INSTITUTIONS**
>
> Hate group members and followers of their ideologies sometime manage to obtain important positions of power.  When the city of Baltimore recently hired Glen Keith Allen, a neo-Nazi, nobody knew of his involvement with white supremacist groups, except for us.  Because of our investigation and expose, he was swiftly fired.

*Id.*; see also Compl. ¶ 113.  A small photograph of Allen accompanied the item.  Ex. C at 2.

## IV.   ALLEN'S COMPLAINT

Allen filed a version of this action in September 2018.  *See* Complaint, *Allen v. Beirich, et al.*, No. 1:18-cv-02904-ELH (D. Md.) [ECF Dkt. 1], Sept. 19, 2018.  The case was assigned to Judge Hollander, and Allen immediately dismissed it.  *See* Notice of Voluntary Dismissal, No. 1:18-cv-02904-ELH (D. Md. Sept. 19, 2018) [ECF Dkt. 2]

Allen then filed the near-identical operative Complaint months later, on December 8, 2018.  *See* Compl.  The Complaint purports to state nine causes of action.  In addition to seeking a declaratory judgment on SPLC's nonprofit status, Compl. ¶¶ 121-32, Allen asserts civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *id.* ¶¶ 133-58, as well as for tortious interference with prospective advantage and with contract, *id.* ¶¶ 159-71, negligent training and supervision, *id.* ¶¶ 172-77, restitution, *id.* ¶¶ 178-82, and aiding and abetting a

breach of contract, *id.* ¶¶ 192-97.  He also asserts a time-barred defamation claim arising from

the Hate Map flyer, referring to it as "published in 2017," Compl. ¶¶ 113, 183-91.  While

couching its causes of action in these terms, though, the Complaint essentially alleges that SPLC

engages in "ritual defamation" through its reporting about and designation of "hate groups,"

Compl. at 3, ¶¶ 15-38.

## **ARGUMENT**

To survive a motion to dismiss, a plaintiff must set forth factual allegations sufficient to

plausibly allege each element of the stated cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  These factual allegations must be sufficient to "'raise a right to relief above the

speculative level.'"  *Mayfield v. Nat'l Assoc. for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377

(4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  As such, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Claims arising from challenged speech implicate constitutional rights, and courts review

them carefully.  As the D.C. Court of Appeals recently noted:

> The First Amendment guarantees freedom of speech and freedom of the
> press.  Costly and time-consuming defamation litigation can threaten those
> essential freedoms.  To preserve First Amendment freedoms and give
> reporters . . . the breathing room they need to pursue the truth, the
> Supreme Court has [therefore] directed courts to expeditiously weed out
> unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (citations omitted), *cert.*

*denied sub nom. Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 138 S. Ct. 366 (2017).  Speech claims

are also susceptible to early judicial action for a more practical reason:  "[U]nlike in most

litigation, in a libel suit the central event—the communication about which suit has been

brought—is ordinarily before the judge at the pleading stage.  He or she may assess it upon a

motion to dismiss, firsthand and in context."  2 Robert D. Sack, *Sack on Defamation* § 16.2.1

(5th ed. 2017).  As such, courts frequently dismiss such speech cases where, as here, they are

deficient as a matter of law.  *Id.*; *see also, e.g.*, *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180,

182, 186 (4th Cir. 1998) (affirming dismissal of libel claim "[b]ecause the challenged statements

are constitutionally protected"); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091-92 (4th Cir.

1993) (same).  Because all the damages alleged by the Complaint's various causes of action flow

from SPLC's *publications*, First Amendment rights are implicated and the underlying

communication is properly before the Court.  Allen's claims should be dismissed as a matter of

law because they fail to state a claim.

## I.      BECAUSE ALLEN'S ALLEGED HARM FLOWS FROM NON-ACTIONABLE SPEECH, HIS CLAIMS MUST BE DISMISSED

### A.      Litigants Cannot Evade Constitutional Limitations on Speech Claims by Rebranding Defamation Claims as Alternate Torts

As the Supreme Court has held, causes of action seeking damages for injuries arising

from the content of a publication, however they may be styled by plaintiffs seeking to avoid the

constitutional limits on defamation claims, are subject to all of the defenses that govern such

claims.  *Falwell*, 485 U.S. at 56 (dismissing claim for infliction of emotional distress by subject

of advertisement parody because he could not prove the elements of a cause of action for

defamation); *Food Lion, Inc.*, 194 F.3d at 522 (recognizing rule that plaintiffs may not "recover

defamation-type damages under non-reputational tort claims, without satisfying the stricter [First

Amendment] standards of a defamation claim").  Put another way, "a plaintiff may not avoid the

protection afforded by the Constitution . . . merely by the use of creative pleading."  *Beverly*

*Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191,

196 (8th Cir. 1994) (noting that the constitutional fault standard required for an actionable

defamation claim "must equally be met for a tortious interference claim based on the same

conduct or statements").  As another court explained, the law forecloses creative pleading as a

means for "end-running other requirements of defamation law."  *Foretich v. Advance Magazine*

*Publishers, Inc.*, 765 F. Supp. 1099, 1104-06 (D.D.C. 1991); *see also Desnick v. Am. Broad.*

*Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (citing *Hustler*, court dismissed causes of action for

trespass, promissory fraud, invasion of privacy and wiretapping); *Unelko Corp. v. Rooney*, 912

F.2d 1049, 1057-58 (9th Cir. 1990) ("claims for product disparagement, or 'trade libel,' and for

tortious interference with business relationships" arising from television commentator's remarks

concerning plaintiff's product "are subject to the same first amendment requirements that govern

actions for defamation"); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 30 F. Supp. 2d 1182,

1192-93 (D. Ariz. 1998) (where claim arose from news broadcast, "in order for Plaintiffs to

prevail on their intentional interference with business relationships claim, they must meet the

First Amendment's requirements for defamation actions").[5]

Because all the damages alleged by the Complaint flow from SPLC's truthful statements

and non-actionable opinions, *see* Part I.B, *infra*, they are properly dismissed.  To the extent that

plaintiff may arguably premise separate injuries on SPLC's newsgathering activities, those

claims also fail.  The First Amendment provides significant protections to organizations that

receive and publish information, even where that information was illegally obtained by a third

party—as alleged here.  *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) (media not

liable for knowing receipt and publication of illegally intercepted phone call); *New York Times*

*Co. v. United States*, 403 U.S. 713 (1971) (per curiam) (upholding right to publish information of

---

[5] In many cases, a plaintiff seeks to "end-run" the First Amendment limitations on a defamation
action because he cannot prove fault.  In this case, Allen cannot meet his threshold burden of pleading
facts plausibly establishing substantial *falsity*.  *Milkovich* , 497 U.S. at 19-20.

public concern obtained from documents stolen by a third party). In *Bartnicki*, for example, a radio station received and broadcast a recording of an illegally wiretapped phone call of public interest. 532 U.S. at 518-19. One of the participants in the call sued the station under a state wiretapping statute. The Supreme Court held that even though the recording, receipt, and publication of the tape were all illegal under the state wiretapping statute, the First Amendment precluded imposing liability on the radio station where the radio station had not itself planned, participated in, or solicited the illegal interception. *Id*. at 525.

Here, Allen alleges that *Dilloway* stole documents from the National Alliance and then, three days later, contacted SPLC. Compl. ¶¶ 55-60. Allen does not allege any facts plausibly establishing that SPLC had any contact with Dilloway prior to the theft, or that SPLC was aware of or solicited his allegedly illegal acts ahead of time. *See id*. ¶¶ 55-65. Allen simply makes the conclusory allegation that an after-the-fact payment to Dilloway somehow "induced" the theft, but the pleaded facts of the Complaint do not support that inference. At the time of Dilloway's alleged theft, SPLC and Dilloway were strangers. *See id*. As the Supreme Court held in *Bartnicki*, "a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." 532 U.S. at 535. The First Amendment thus also precludes any of Allen's claims against SPLC based on Dilloway's allegedly illegal acts, even considered apart from the publication.

Moreover, even if the First Amendment did not shield SPLC's reporting and even if Allen were able to show that SPLC somehow participated in a theft (which he has not), Allen also lacks standing to assert claims based on Dilloway's actions. As set out in the Complaint, Dilloway was an employee of the National Alliance. Compl. ¶ 55. The Complaint does not assert that Allen represents, controls, or otherwise has standing to bring claims on behalf of the

National Alliance, or that he had any propriety rights to the records Dilloway allegedly stole, or

that Dilloway owed Allen any fiduciary duty.  *See generally* Compl.  As a basic principle of tort

law, Allen lacks standing to assert claims for receipt of stolen goods, bribery of a fiduciary, mail

fraud, and other torts arising out of one third party's alleged removal of documents belonging to

another third party.

### B.      Allen's Defamation Claim Fails as a Matter of Law

Although the Complaint expressly bases a defamation claim solely on the Hate Map

flyer, Allen premises all of his claims on reputational damages allegedly arising from the Article.

Claims arising from either are legally deficient because they are time-barred and because Allen

has failed to plead facts establishing that the statements are substantially false.

### 1.      Any Defamation Claim Based on the Article is Time-Barred

The Complaint focuses primarily on the Article, published on August 17, 2016, *see, e.g.*,

Compl. ¶¶ 9, 11, 47, 52, 53, 76-86; 89-100, which he claims caused extensive harm to his

reputation and ended his professional career, *id.*  ¶¶ 76, 95-100.  His actual pleaded defamation

claim is not premised on that article, which clearly is outside the statute of limitations.  *See* Md.

Cts. & Jud. Proc. Code Ann. § 5-105 (one year statute of limitations for slander and libel); *see*

*also Tani v. Washington Post*, Civil No. PJM 08-1130, 2009 WL 8652384, at *2 (D. Md. June

18, 2009) ("Because these articles were widely available online and could have been discovered

immediately, the statute of limitations began to accrue on the date the articles were published.").

Instead, the defamation claim is premised on a single publication, the Hate Map flyer distributed

"in 2017."  Compl. ¶¶ 84, 184.[6]

---

[6] The Complaint's link to the Hate Map flyer appears to be to a computer file folder that is not
publicly accessible, Compl. ¶¶ 113, 119, 184, but is attached here as Exhibit C.

2.      Any Defamation Claims—on the Article or Otherwise—
        Fail on Their Merits

To recover for defamation, the plaintiff must establish that: "(1) the defendant made a

defamatory statement regarding the plaintiff to a third person; (2) the statement was *false*; (3) the

defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm

thereby." *Redmonds Enter., Inc. v. CSX Transp., Inc.*, Civil No. CCB-16-3943, 2018 WL

3611049, at *4 (D. Md. July 27, 2018) (citations and quotation omitted) (emphasis added); s*ee

also Milkovich*, 497 U.S. at 19-20.  Again, Allen does not assert that the core allegedly damaging

factual allegations made about him are false.  He does not dispute that he is or was a "neo-Nazi,"

"involve[ed] with white supremacist groups," or donated to those organizations.  Allen does not

dispute the authenticity of the National Alliance documents relied on by SPLC in the Article,

showing his years-long involvement with the NA.  *See, e.g.*, Compl. ¶ 78.  Allen also does not

dispute that the NA is a neo-Nazi group that advocates racist ideologies.  *See generally Extremist

Group Info: National Alliance*, SPLC, https://www.splcenter.org/fighting-hate/extremist-files/

group/national-alliance.  Indeed, Allen does not dispute the accuracy of the underlying facts in

the Article—that he had financial and other ties to National Alliance and AEP.[7]  As such, he has

---

[7] Although the Complaint disputes that AEP is properly described as "racist," this is not a potentially
actionable statement of false *fact*.  Because only statements provably false are properly subject to a legal
claim, *Milkovich*, 497 U.S. at 19-20, courts repeatedly have found statements asserting bigotry, racism,
prejudice, or political extremism to be non-actionable opinion.  *See, e.g.*, *Standing Comm. on Discipline
v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (calling a judge "anti-Semitic" was a non-actionable
opinion); *Buckley v. Littell*, 539 F.2d 882, 893-95 (2d Cir. 1976) ("the question what constitute 'fascism'
or the 'radical right'"; word "fascist" is "loose" and "ambigu[ous]" and cannot be regarded as a statement
of fact because of the "tremendous imprecision" of meaning and usage of the term); *Squitieri v. Piedmont
Airlines, Inc.*, No. 3:17CV441, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) ("Statements indicating
that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false.")
(collecting cases); *Forte v. Jones*, No. 1:11-cv-0718 AWI BAM, 2013 WL 1164929, at *6 (E.D. Cal.
Mar. 20, 2013) (that "the allegation that a person is a 'racist' . . . is not actionable because the term
'racist' has no factually-verifiable meaning."); *Edelman v. Croonquist*, No. 09-1938(MLC), 2010 WL
1816180, at *6 (D.N.J. May 4, 2010) ("characterization of [plaintiffs] as racists is a subjective assertion,
not sufficiently susceptible to being proved true or false to constitute defamation."); *Martin v. Brock*, No.

(continued...)

14

not pleaded that the Article is substantially false, as he must to state a viable claim for reputational damages arising from it. *Milkovich*, 497 U.S. at 19-20.

Plaintiff specifically alleges that the following statements made in the Hate Map flyer is actionable as defamation.

### EXPOSING RACISTS WHO INFILTRATE PUBLIC INSTITUTIONS

> Hate group members and followers of their ideologies sometime manage
> to obtain important positions of power.  When the city of Baltimore
> recently hired Glen Keith Allen, a neo-Nazi, nobody knew of his
> involvement with white supremacist groups, except for us.  Because of our
> investigation and expose, he was swiftly fired.

Hate Map flyer; *see also* Compl. ¶¶ 84, 113, 184.  Plaintiff asserts that the falsity in that statement lies in the word "infiltrated," arguing he did not "infiltrate" the Baltimore City law department because "[h]e did not enter into it secretly or clandestinely with hostile or subversive intent so as to attack it or seize control of it from within." *Id.* ¶ 186.  But the use of the verb "infiltrated" is the kind of "loose, figurative, or hyperbolic language" that is "not capable of being proved true or false" and therefore is non-actionable opinion.  *See, e.g.*, *Schnare v. Ziessow*, 104 F. App'x 847, 851 (4th Cir. 2004) (enumerating the protections for opinion and rhetorical hyperbole established by *Milkovich*); *Baltimore Sports & Soc. Club, Inc. v. Sport & Soc., LLC*, 228 F. Supp. 3d 544, 550-51 (D. Md. 2017).  As in *Milkovich*, a reader of the Hate Map flyer would recognize that the word "was no more than rhetorical hyperbole, a vigorous

---

(...continued)
07C3154, 2007 WL 2122184, at *3 (N.D. Ill. July 19, 2007) ("[U]nder Illinois law, statements of opinion that someone is racist 'fit comfortably within the immunity for name-calling' unless they imply the existence of undisclosed, defamatory facts." (citation omitted)); *Williams v. Kanemaru*, 309 P.3d 972 (Table), 2013 WL 4458887, at *2 (Haw. Ct. App. Aug. 20, 2013) (accusation of racism based on disclosed facts not actionable for defamation); *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (accusation that plaintiffs "hated Jews" nonactionable opinion); *Covino v. Hagemann*, 627 N.Y.S.2d 894, 896 (N.Y. Sup. Ct. 1995) ("[a]ccusations of racism and prejudice" have routinely been found to constitute non-actionable expressions of opinion).

epithet used by those who considered [plaintiff's] position" unacceptable.  497 U.S. at 14.

Protection for this type of speech "provides assurance that public debate will not suffer for lack

of imaginative expression . . . which has traditionally added much to the discourse of our

Nation."  *Milkovich*, 497 U.S. at 20 (internal quotation marks omitted)*; see also Schnare*, 104 F.

App'x at 853 ("[L]usty and imaginative expression[s] of contempt felt toward [an] adversary . . .

belong to the language of controversy rather than to the language of defamation.") (internal

marks and citations omitted).

Moreover, the factual basis for defendants' characterization—Allen obtained a senior job

with the city despite his affiliations with white supremacists—is not disputed and was disclosed

both in the Hate Map flyer and in the Article that it incorporated by reference.  Under Maryland

law, "[i]f . . . the facts from which a defendant forms his or her opinion are given or are readily

available and those facts cannot be proved false, the defendant is not subject to liability for the

opinion."  *Shulman v. Rosenberg*, No. 1683 Sept. Term 2016, 2017 WL 5172642, at *12 (Md.

Ct. Spec. App. Nov. 8, 2017) (quotation and citations omitted); *see also Schnare*, 104 F. App'x

at 852 (disclosure of the factual basis for an opinion permits the reader to "draw her own

conclusion" and it is not actionable).  Under these circumstances, the words complained of are

simply not actionable.

Allen also asserts that the Hate Map flyer implicitly "accuse[d] Allen of being an

unethical and/or incompetent attorney."  Compl. ¶ 188.  This, he argues, is false because he

"never let political issues influence his legal work" and "remained loyal to his professional and

ethical obligations" to Baltimore.  *Id.* ¶ 186-87.  But the Hate Map flyer does not make any

statements about his ethics or competence as a lawyer.  Thus, Allen asserts defamation by

implication.  Given the Constitution's protection for truthful speech, a plaintiff alleging

defamation by implication must make an "especially rigorous showing." *Chapin*, 993 F.2d at 1092-93.  To qualify as an actionable statement, "the language must . . . be reasonably read to impart the false innuendo" and the language must "affirmatively suggest that the author intends or endorses the inference." *Id.*  This is because "courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *White v. Fraternal Order of Police*, 909 F.2d 512, 518-19 (D.C. Cir. 1990).

The Complaint has not and cannot make this showing.  Nothing in SPLC's reporting on Allen reasonably suggests that defendants implied or intended to imply he is incompetent or unethical.  Indeed, the Article itself states that "Allen may well be a skillful attorney." *See* Article at 6.  SPLC did not suggest that Allen's racist affiliations conflicted with effectively representing the City, but rather that they were troublingly aligned with the City's history of aggressively defending allegedly racist police practices. *Id.*  As the Article concluded, "at a time when Baltimore and its police department are facing devastating criticism over their policing practices, and a crisis over their treatment of minority residents, the hiring of a known neo-Nazi to litigate for them surely raises questions." *Id.*  Those questions were about Baltimore's attitude to minorities, *not* plaintiff's professional skills.  Thus, the brief and truthful statements in the Hate Map flyer, like the Article, are not capable of sustaining the defamatory implications plaintiff alleges.  Plaintiff's defamation claim—and therefore all of his claims premised on the same constitutionally protected speech—must be dismissed.

II.    **THE NON-DEFAMATION CLAIMS FAIL AS A MATTER OF LAW FOR ADDITIONAL REASONS AS WELL**

A.    **Allen Is Barred From Challenging SPLC's Nonprofit Status**

Allen's attempt to challenge SPLC's tax-exempt status in this Court is improper for numerous reasons. *First*, and most fundamentally, Allen's approach is statutorily foreclosed

because this is not a proper venue and Allen is not a proper plaintiff.  *See* 28 U.S.C. § 2201; 26

U.S.C. § 7428.  The Declaratory Judgment Act provides that:

> (a) In a case of actual controversy within its jurisdiction, except with
> respect to Federal taxes other than actions brought under section 7428
> of the Internal Revenue Code of 1986 . . . , any court of the United
> States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought. Any
> such declaration shall have the force and effect of a final judgment or
> decree and shall be reviewable as such.

28 U.S.C. § 2201.  Accordingly, federal courts may issue declaratory judgments only in cases of

actual controversy that fall within the court's jurisdiction and are *not* related to federal taxes,

unless they are authorized under 26 U.S.C. § 7428.  That provision specifically governs

"[d]eclaratory judgments relating to status and classification of organizations under section

501(c)(3)."  26 U.S.C. § 7428.  Section 7428 creates a remedy, "[i]n cases of actual controversy

involving a determination by the Secretary with respect to the initial qualification or continuing

qualification of an organization as an organization described in section 501(c)(3) which is

exempt from tax under 501(a)."  However, the statute provides that, where there is such a

controversy, it may only be pursued in certain venues:

> [U]pon the filing of an appropriate pleading, the United States Tax Court,
> the United States Court of Federal Claims, or the district court of the
> United States for the District of Columbia may make a declaration with
> respect to such initial qualification or continuing qualification.

*Id.*  Accordingly, "the United States District Court for the District of Maryland is not a proper

forum for the issuance of a declaratory judgment under section 7428."  *Barber v. IRS*, Civil No.

Y-96-2366, 1997 WL 151996, at *1 (D. Md. Jan. 7, 1997); *see also Baker v. Family Credit

Counseling Corp.*, 440 F. Supp. 2d 392, 405 n.19 (E.D. Pa. 2006).

The statute includes another limitation fatal to Allen's claim: A limitation on third-party challenges to tax status:

> (1) Petitioner.  A pleading may be filed under this section only by the organization the qualification or classification of which is at issue.

26 U.S.C. § 7428.  In *Barber*, an individual brought a complaint on behalf of the American Indian Ministries over its dispute with the IRS with respect to its efforts to be qualified as a tax exempt organization under 501(c)(3).  This Court granted the IRS' motion to dismiss.  Because the District of Maryland is not the proper forum, the court lacked jurisdiction to issue a declaratory judgment.  The court also noted that Barber was not a proper plaintiff, because "relief under section 7428 may only be sought by the organization the qualification or classification of which is at issue."  *Barber*, 1997 WL 151996, at *1 n.3 (internal marks omitted).  Thus, under the statute it is clear that Allen cannot obtain a declaratory judgment that the SPLC is ineligible for tax-exempt status under 501(c)(3) both because the District Court of Maryland is an improper forum and because he does not have any right to assert this claim.  26 U.S.C. § 7428.

*Second*, in any event, there is no "actual controversy" between Allen and the SPLC as to the SPLC's eligibility for tax-exempt status under 501(c)(3), because "[w]hether an entity is entitled to federal tax-exempt status is a determination that is committed, in the first instance, to the IRS."  *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473, 477 (1st Cir. 2005) (*citing Bob Jones Univ. v. United States*, 461 U.S. 574, 596-97 (1983).  A declaration issued by the Court as between Allen and the SPLC that it has violated the requirements for 501(c)(3) eligibility would have no practical effect on the SPLC's tax-exempt status, because the IRS is not a party here.

*Third*, even if Allen had brought an action against the IRS to challenge the SPLC's tax-exempt status in a correct venue—*i.e.*, had he filed a completely different lawsuit in D.C.—he would still lack constitutional standing.  As the D.C. Circuit has explained, there are "'special problems'" with standing "when a litigant seeks to attack the tax exemption of a third party." *Fulani v. Brady*, 935 F.2d 1324, 1326-27 (D.C. Cir. 1991) (citation omitted) (rejecting standing of political candidate to challenge the Treasury's failure to revoke the Section 501(c)(3) status of a political organization sponsoring presidential debates).  Moreover, as that court recently noted, "[t]he Supreme Court and this court have repeatedly rejected standing in cases seeking the withdrawal of tax-exempt status for some entity in the hope that it might alter the behavior or resources of third parties not before the court." *Abulhawa v. Dep't of the Treasury*, No. 17-5158, 2018 WL 3446699, at *3 (D.C. Cir. June 19, 2018); *see also, e.g.*, *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-43 (1976) (indigent plaintiffs lacked standing to challenge the Treasury's decision to offer favorable tax treatment to hospitals that offered only emergency services to indigent patients because the hospitals could continue to deny full care to the indigent regardless of their tax treatment); *Khalaf v. Regan*, Civil No. 83-2963, 1985 WL 392, at *1 (D.D.C. Jan. 8, 1985) (rejecting standing for claim seeking withdrawal of tax-exempt status for Jewish organizations because a court order could not plausibly affect Israeli policies, and the plaintiffs' injuries were the "direct and proximate result of actions taken by independent third parties not now, and not likely ever to be, before this or any U.S. court").  In addition to all of its other failings, therefore, Count I also fails because Allen lacks constitutional standing to bring an action for declaratory judgment against SPLC.

### B.        Allen Fails to State a Claim Under the RICO Act

Plaintiff asserts that defendants Beirich and Potok conspired to and engaged in a "pattern of racketeering activity," in violation of the RICO Act, 18 U.S.C. §§ 1962(c) & (d).  To establish a violation of RICO under § 1962(c), plaintiff must show he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  To state a claim for RICO conspiracy, plaintiff "must show the existence of a RICO 'enterprise' in which the defendant[s] conspired to participate, and that the defendant[s] conspired that a member of the enterprise would perform at least two racketeering acts constituting a 'pattern of racketeering activity.'"  *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  Thus, claims require a showing that "racketeering activity" occurred. "'Racketeering activity' is defined as any of a number of predicate criminal acts, including mail fraud, wire fraud, and interstate transport of money fraudulently obtained."  *Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423, 462 (D. Md. 2014), *as corrected* (Mar. 20, 2014) (citation omitted).  *See also* 18 U.S.C. § 1961(1) (listing criminal acts constituting racketeering activity)).

Here, Allen alleges that defendants, as predicate acts: (1) received stolen documents from an employee of the National Alliance, in violation of Alabama law and 18 U.S.C. § 2315; (2) paid an employee of the National Alliance for those documents, in violation of Alabama law and the federal Travel Act, 18 U.S.C. § 1952; and (3) engaged in multiple counts of mail fraud, in violation of 18 U.S.C. § 1341.  Compl. ¶¶ 142-51.  The claims for mail fraud are premised on the following: "depriv[ing] the National Alliance of the honest services of Dilloway," *id.* ¶ 145; "falsely stating that plaintiff has 'infiltrated' the Baltimore City Law Department," *id.* ¶ 146; falsely over-stating the number of hate groups in the U.S., *id.* ¶ 147; using a "definition of 'hate

group' that is at odds with its widely accepted connotation," *id.* ¶ 148; making "intentionally false statements regarding Maajid Nawaz," *id.* ¶ 149; making a "false statement" about whether SPLC engaged in political campaign activities, *id.* ¶ 150; and making "intentionally false statements about Charles Murray." *Id.* ¶ 151.  In other words, the alleged "racketeering activity" consisted largely of interactions with a news source, Dilloway, and allegedly "false" publications about various matters.  Plaintiff asserts that, as a result of those acts, he has suffered reputational harm and lost his job with the Baltimore City Law Department.  *Id.* ¶ 154.

Even apart from the constitutional bar on a RICO action over such protected speech, *see* Part I.A., Plaintiff's RICO claims fail for numerous reasons.  The most significant reasons are first, that it is well-established that defamation is not "racketeering activity" and, second, that none of plaintiff's other purported predicate acts bear any proximate relationship to the harm he allegedly suffered.[8]

1.     Plaintiff's RICO Claim is a Thinly Disguised Defamation Claim
and Defamation is Not a Predicate Act Under RICO

Despite plaintiff's attempt at creative drafting, the alleged predicate acts essentially are that defendants obtained documents from a source and published articles about Allen and others,

---

[8] For the avoidance of doubt, SPLC does not concede that *any* of the alleged conduct constitutes predicate acts under RICO.  SPLC's interactions with Dilloway constitute protected newsgathering pursuant to *Bartnicki v. Vopper*, 532 U.S. 514 (2001) and are not criminal offenses.  Moreover, documents without any commercial market are not subject to the National Stolen Property Act and their theft does not constitute a predicate act.  *See, e.g.*, *In Re Carol Vericker*, 446 F.2d 244 (2d Cir. 1971).  Payment of a source does not constitute "bribery" under RICO, which is limited to bribery of public officials and witnesses, *see, e.g.*, 18 U.S.C. § 201; *United States v. Ferriero*, 866 F.3d 107, 115-16 (3d Cir. 2017) (to be a predicate under RICO state bribery laws must concern the integrity of public officials and public actions).  Plaintiff's misleading attempt to rely on misdemeanor "commercial bribery" under Alabama law is unavailing.  And it is well-established that statements that are harmful to reputation are not wire and mail fraud.  *See, e.g.*, *Reich v. Lopez*, 38 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (rejecting defamation as wire fraud: "while there may be intent to harm, there is no intent to obtain property from Plaintiffs, and there is no scheme to defraud within the wire fraud statute"), *aff'd*, 858 F.3d 55 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 282 (2017); *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Restaurant Emps. Union*, 215 F.3d 923, 927 (9th Cir. 2000) (the purpose of the wire fraud statutes is "to punish wrongful transfers of property . . . not to salve wounded feelings" and harm to reputation).

which Allen claims harmed his reputation and professional career.  Those allegations sound in

defamation, not RICO.  Indeed, plaintiff relies on the same allegations in support of his claim for

defamation.  *See* Compl. ¶¶ 183-191 (Count VIII).

Allen is not the first to attempt to reframe defamation as a RICO claim.  *See, e.g.*, *Kimm*

*v. Lee*, No. 04 Civ. 5724(HB), 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005) ("This is

certainly not the first attempt to spin an alleged scheme to harm a plaintiff's professional

reputation into a RICO claim."), *aff'd sub nom*. *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F.

App'x 14 (2d Cir. 2006).  But for more than 30 years courts universally have held that alleged

acts of defamation—whether pled as wire fraud or mail fraud or any other pretextual claim—are

*not* predicate acts that can support a RICO claim.  *See Hourani v. Mirtchev*, 796 F.3d 1, 10 n.3

(D.C. Cir. 2015) ("defamation and conspiracy to defame . . . are not predicate acts of

racketeering under RICO"); *Monterey Plaza Hotel*, 215 F.3d at 927 (the purpose of the wire

fraud statutes is "to punish wrongful transfers of property . . . not to salve wounded feelings" and

harm to reputation); *Michalak v. Edwards*, 124 F.3d 198 (Table), 1997 WL 561424, at *4 (6th

Cir. Sept. 9, 1997) ("conspiracy to defame cannot serve as the predicate criminal act necessary

for the imposition of civil RICO liability"); *Wegner v. Wells Fargo Bank Nat'l Ass'n*, Case No.

2:17-cv-1429 JCM (PAL), 2018 WL 3114528, at *7 (D. Nev. June 25, 2018) ("defamation is not

a predicate offense pursuant to RICO"), *appeal filed*, 2018 WL 3114528 (9th Cir. July 11, 2018);

*Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *9 (D. Md. Mar. 17,

2015) ("Courts . . . are universally hostile" to "attempt[s] to 'spin an alleged scheme to harm a

plaintiff's professional reputation into a RICO claim.'") (citation omitted) (collecting cases);

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*, No. CV 14-1299, 2014 WL 5529746, at

*5 (E.D.N.Y. Oct. 30, 2014) ("defamatory statements . . . cannot form the basis of a RICO

claim"); *Ritchie v. Sempra Energy*, Civil No. 10-cv-1513-CAB (KSC), 2013 WL 12171757, at

*4 n.2 (S.D. Cal. Oct. 15, 2013) ("It is well-established that defamation does not meet the

definition of a RICO predicate act.") (citation omitted); *Kimm*, 2005 WL 89386, at *5 ("it is

firmly established that defamation and many other similar allegations do not provide the

requisite predicate for RICO violation") (collecting cases); *Conte v. Newsday, Inc.*, 703 F. Supp.

2d 126, 137 n.8 (E.D.N.Y. 2010) ("It is . . . well established that defamation does not provide a

requisite predicate act for a RICO claim."); *Curtis & Assocs., P.C. v. Law Offices of David M.*

*Bushman, Esq.*, 758 F. Supp. 2d 153, 169 n.19 (E.D.N.Y. 2010) ("it is well-established that

defamation does not meet the definition of a RICO predicate act"), *aff'd sub nom. Curtis v. Law*

*Offices of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011); *Lathrop v. Juneau &*

*Assocs., Inc.*, No. 03-CV-0194-DRH, 2005 WL 3797706, at *7 (S.D. Ill. Apr. 25, 2005)

("defamation cannot constitute a predicate act under RICO"); *Marks v. City of Seattle*, No. C03-

1701, 2003 WL 23024522, at *6 (W.D. Wash. Oct. 16, 2003) (dismissing RICO claim because

defamation is not a predicate acts under RICO); *Contes v. City of N.Y.*, No. 99 Civ. 1597(SAS),

1999 WL 500140, at *8 (S.D.N.Y. July 14, 1999) (defamation not a viable predicate act under

RICO); *Mansmann v. Smith*, No. CIV. A. 96-5768, 1997 WL 145009, at *2-6 (E.D. Pa. Mar. 21,

1997) (same); *Mount v. Ormand*, No. 91 Civ. 0125 (KTD), 1991 WL 191228, at *2 (S.D.N.Y.

Sept. 18, 1991) (same); *Jernryd v. Nilsson*, No. 84 C 7551, 1985 WL 3590, at *16 (N.D. Ill. Nov.

8, 1985) (same); *Segarra v. Messina*, 153 F.R.D. 22, 28 (N.D.N.Y. 1994) (same); *Cullen v.*

*Paine Webber Grp., Inc.*, 689 F. Supp. 269, 272 n.4 (S.D.N.Y. 1988) ("defamation is not a

predicate act under RICO"); *Manax v. McNamara*, 660 F. Supp. 657, 660 (W.D. Tex. 1987)

(defamatory mailings are "in no way a 'fraud'" that can support a RICO claim), *aff'd*, 842 F.2d

808 (5th Cir. 1988).

These principles are so well established that a federal judge warned a plaintiff that it "came perilously close to violating Rule 11" by attempting to construe defamation as wire fraud in order to assert a RICO claim—more than a quarter-century ago. *Creed Taylor, Inc. v. CBS, Inc.*, 718 F. Supp. 1171, 1180 (S.D.N.Y. 1989). Other courts similarly have cautioned against litigants abusing RICO to seek treble damages for what are plainly state-law defamation claims. *See Chovanes v. Thoroughbred Racing Ass'n*, No. CIV. A. 99-185, 2001 WL 43780, at *9 (E.D. Pa. Jan. 18, 2001) ("The RICO statute, which serves a vital role in some situations, should not be used to federalize routine state matters or to award treble damages."); *Kimm*, 2005 WL 89386, at *5 ("It is unfortunate—to say nothing of expensive and time consuming—to have watched the proliferation of alleged RICO claims. While some show a degree of creativity, they are more frequently an effort to construct a treble damage suit from what, at best, is a civil wrong, something that was never the intention of those who drafted the statute . . . ."). Allen's manufactured RICO claim represents such an attempt and should be rejected.

> 2. Allen Fails to Show the Predicate Acts
> Were the Proximate Cause of His Alleged Injury

To the extent that any of Plaintiff's RICO claims survive as legitimate predicate acts, they nevertheless still fail because plaintiff fails to show any plausible proximate relationship between the pleaded predicate acts and his alleged reputational injury. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). Proximate cause for RICO purposes requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 9. A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Holmes*, 503 U.S. at 271. As the United States

25

Supreme Court made clear, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Grp.*, 559 U.S. at 12; s*ee also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Here, Allen asserts, among other things, predicate acts based on defendants' alleged involvement in the theft of documents from the National Alliance. Compl. ¶¶ 60-66; 143-45. Plaintiff does not, however, purport to represent the National Alliance or explain how those predicate acts caused harm to *his* personal reputation or business, the sole damages alleged. *Id.* ¶ 154. He asserts that the theft of the documents set in motion a chain of events: the documents were given to SPLC, they contained information which defendants used as part of their research and reporting, which many months later they referenced in articles and reports, and those articles prompted public outrage, which, in turn, led to defendant's reputational harm and departure from the Baltimore City Law Department. *Id.* ¶¶ 60-76; 197-98. This is precisely the kind of attenuated chain of causation that the Supreme Court has rejected repeatedly. *See, e.g.*, *Anza*, 547 U.S. at 458-61 (rejecting RICO claim premised on defendant's tax evasion, which enabled defendants to offer anticompetitive lower prices, which harmed plaintiff's business); *Hemi Grp.*, 559 U.S. at 6 (rejecting RICO claim premised on defendant's failure to disclose its customers which prevented New York City from identifying those customers who failed to pay taxes); *Holmes*, 503 U.S. at 267-70 (rejecting RICO claim premised on defendant's stock manipulation, which rendered third party broker-dealers insolvent, preventing them from paying plaintiff).

Allen also alleges that defendants "intentionally inflat[ed] their 'hate group' tallies," made false statements about various "nonviolent groups and persons," made false statements on

IRS form 990, and made false allegations about third parties.  Compl. ¶¶ 147-51.  But Allen

makes no attempt at all to show how those alleged predicate acts proximately caused *him* any

reputational harm or caused his termination.  *Id.* ¶ 154.  The sole allegation with any plausible

proximate relationship to plaintiff's alleged injuries is the alleged predicate act that defendants

"falsely stat[ed] that Allen had 'infiltrated' the Baltimore City Law Department."  *Id.* ¶ 154.  But,

as set out above, defamation is not a predicate act under RICO and, even if it were, plaintiff's

defamation claim fails.  *See* Part I.A, *supra*.  For all of the foregoing reasons, plaintiff's RICO

claims must be dismissed with prejudice.

### C.     The Remaining Tort Claims Fail

#### 1.     Tortious Interference with Prospective Advantage (Count IV)

Under Maryland law, "[t]he elements of tortious interference with prospective business

relations are: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in

their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without

right or justifiable cause on the part of defendants (which constitutes malice); and (4) actual

damage and loss resulting."  *Press v. United States*, Civil No. JKB-17-1667, 2018 WL 2237492,

at *8 (D. Md. May 16, 2018) (quotation marks and citations omitted).  The alleged conduct must

be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business

relationships."  *Carter v. Aramark Sports & Entm't Servs., Inc.*, 835 A.2d 262, 280 (Md. Ct.

Spec. App. 2001) (quoting *Kramer v. Mayor & City Council of Baltimore*, 723 A.2d 529 (Md.

Ct. App. 1999)).

The Complaint alleges that Allen had an at-will contractual employment relationship with

the City of Baltimore, *see* Compl. ¶ 160, that Beirich and the SPLC knew about his employment,

*id*. ¶ 161, and intentionally interfered with that relationship by receiving, using, and engaging in

bribery to obtain documents used to publish the Article, *id.* ¶ 162.  Allen alleges that he suffered damages in the form of the loss of his employment with the City of Baltimore and "severe damage to his *reputation* as an attorney."  *Id.* ¶ 163 (emphasis added).

The allegations fail for multiple reasons.  *First*, Allen offers no explanation as to how SPLC could have intended in May 2015, when he alleges it received NA documents, to have interfered with an employment relationship he did not enter until January 2016.  *Second*, the Complaint alleges that the cause of his firing was the Article in August 2016, *id.* ¶ 76, *not* the supposedly improper receipt of news materials in May 2015.  In order to establish causation, "a plaintiff must prove that the defendant's wrongful or unlawful act caused the harm done to the business that was the target of the interference."  *Campbell v. Lyon*, 26 F. App'x 183, 187 (4th Cir. 2001) (citing *Alexander v. Evander*, 650 A.2d 260, 260 (Md. 1994)).  Any harm allegedly arising from publication sounds in defamation.  *See* Part I.A, *supra*.  *Finally*, it is not an "unlawful purpose" to receive information on a matter of public concern, even where a third party may have violated the law.  *Bartnicki*, 532 U.S. at 535; *see also supra* at 22 n.8.

### 2.    Tortious Interference with Contractual Relations (Count V) and Aiding and Abetting a Breach of Contract (Count IX)

A plaintiff must plead facts plausibly establishing six elements to state a claim for intentional interference with contractual relations under Maryland law: "(1) [t]he existence of a contract or a legally protected interest between the plaintiff and a third-party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom."  *Interphase Garment Sols., LLC v. Fox TV Stations, Inc.*, 566 F. Supp. 2d 460, 465 (D. Md. 2008) (citation omitted).

The Complaint alleges that a confidentiality agreement existed between Dilloway and the NA, Compl. ¶ 166, that Allen was a third-party beneficiary of this agreement, *id.* ¶ 169, and that Beirich and SPLC intentionally interfered with this supposed contract by receiving and using documents protected by the confidentiality agreement, *id.*  This claim fails as a matter of law, among other reasons, because Allen lacks standing.  The Complaint fails to allege any facts that would identify the existence of this agreement or explain how Allen was an intended third-party beneficiary.  *See Interphase Garment Sols.*, 566 F. Supp. 2d at 465.  The same standing analysis disposes of his claim for "aiding and abetting" a breach of contract.  Moreover, Allen's alleged harms, "the loss of his employment at the city of Baltimore and severe damage to his *reputation* as an attorney," Compl. ¶¶ 170, 197 (emphasis added), could only have flowed from the Article, and sound in defamation.  *See* Part I.A, *supra*.

### 3.   Negligent Trainings and Supervision (Count VI)

In Maryland, a plaintiff alleging negligent training and supervision must establish five elements:  (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring [supervising], or retaining employee as the approximate cause of plaintiff's injuries.  *Jarvis v. Securitas Sec. Servs. USA*, Civil No. 11-cv-00654-AW, 2012 WL 527597, at *5 (D. Md. Feb. 16, 2012).  The Complaint, without any factual support, claims that SPLC's training of Beirich and Potok "fell short of any reasonable standard," Compl. ¶ 175, because they reported on confidential materials and engaged in "one-sided, tabloid-style journalism," *id.* ¶ 176, and that as a result damaged "Allen's reputation."  These bare allegations are insufficient to state a claim for negligent hiring and supervision, including because they fail to provide any factual basis that

would demonstrate how either Beirich or Potok were unqualified.  More centrally, though, the claim seeks recovery for reputational injury, which sounds in defamation and cannot be premised on statements that are not false.  *See* Part I.A, *supra*.

    4. <u>Restitution/Unjust Enrichment (Count VII)</u>

  Maryland courts recognize three required elements for a claim of unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  *Hill v. Cross Country Settlements, LLC*., 936 A.2d 343, 351 (Md. 2007)

  Allen alleges that the SPLC benefitted monetarily from the Article, at Plaintiff's expense.  Compl. ¶¶ 178-182.  The Complaint alleges that these benefits are more specifically described in paragraphs 122, 123, 125, 129 and 130 of the Complaint, all of which relate to allegations about SPLC's 501(c)(3) status.  See Compl. ¶ 182.  Putting aside the fact that Allen lacks standing to make any claim regarding the SPLC's nonprofit status, *see* Part II.A., *supra*, none of these allegations relate to any benefit conferred upon SPLC by Allen.  Moreover, because the claim expressly seeks to recover revenues from the Article, First Amendment limits apply and bar any claim here.  *See* Part I.A, *supra*.

**CONCLUSION**

  For all the foregoing reasons, Defendants respectfully request that this Court grant their motion and enter an order dismissing the Complaint, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:  March 4, 2019               Respectfully submitted,

BALLARD SPAHR LLP

*/s/  Chad R. Bowman*
Chad R. Bowman (Fed. Bar No. 18305)
Elisabeth R. Connell (Fed. Bar No. 19480)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Phone:  (202) 508-1120
Facsimile:  (202) 661-2299
Email:  *bowmanchad@ballardspahr.com*
          *connelle@ballardspahr.com*

*Counsel for Defendants*