**United States District Court**
**For the District of Maryland**
**Northern Division**

_____

Glen K. Allen

    Plaintiff,

    v.       1:18-cv-03781-CCB

Heidi Beirich. et al.,

    Defendants

_____

**Memorandum of Law of the**
**Fitzgerald Griffin Foundation, et al,**
**Amici Curiae in Opposition to Dismissal of Case**

Charles G. Mills
MD Federal Bar No. 810456
210 Virginia Avenue, Unit 4
Front Royal, Virginia 22630
540-749-2383
CGMills@aol.com

Attorney for Amici Curiae:
The Fitzgerald Griffin Foundation
The Hon. Larry Pratt
The H.L. Mencken Club
Public Advocate of the United States, Inc.
Defend Life, Inc. of Maryland

(Continued on Next Page)

Of Counsel:

Terrell N. Roberts, III
Bar number 010091.
Roberts & Wood Attorneys at Law
6801 Kenilworth Avenue
Berkshire Building, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
(240) 463-5798 Cell

# Table of Contents

**Page**

Table of Authorities                                             5

Preliminary                                                      7

The Amici and Their Interests                                    7

Summary of the Argument                                         12

    **I.**    **The IRS is not a necessary party and this venue is not improper (First Claim for Relief and Count).**    14

    **II.**    **Second and Third Claims for Relief and Counts. The Mere Fact that a Claim Alleges a Defamatory Statement Does Not Make the Claim a Disguised Defamation Claim or Preclude It.**    15

    **III.**    **The Statute of Limitations in RICO Cases is Four years (Second and Third Claims for Relief and Counts).**    18

    **IV.**    **The Plaintiff is entitled to Recover under 18 USC 1962 pursuant to its Second and Third Claim for Relief (Second and Third Counts).**    19

    **V.**    **There is no Constitutional Protection for the Torts against the Plaintiff Alleged in the Second, Third, Fourth and Eighth Claims for Relief and Counts.**    20

**VI.    The Defendants have Completely Failed to Set**
**Forth any grounds for the Dismissal of the Fifth and**
**Sixth Claims for Relief and Count.**                                21


**VII.   Unjust Enrichment Does Not Require that Cash**
**Pass from the Plaintiff to the Defendants.**
**(Claim for Relief and Count V)**                                   22


Conclusion                                                           22

# Table of Authorities

**Page**

## Cases

*Agency Holding Corp. v. Malley-Duff & Associates,*
*483 US 143 (1987)*                                                    17

*Ashcroft v. Iqbal*, 556 US  662 (2009)                                19

*Beverly Hills Foodland, Inc. v. United Food*                         15
*and Commercial Workers Union, Local 655*,
39 F.3d 191 (8th Cir. 1994)

*Callan v. State Chemical Manufacturing Co.*,                         18
584 F. Supp. 619 (ED Pa. 1984)

*Duc Tan v. Le*, 259 P. 3d 1108 (Washington 2011)                     20
and same case as No. 86021 (May 9, 2013);
*Phan v. Le*, (2007) certiorari to Minnesota Supreme Court denied
552 US 1320 (2008)

*Gertz v. Robert Welch, Inc*., 418 US 94 (1974)                       18

*HJ Inc. v. Northwestern Tel. Co.* , 492 US 229 (1989)                18

*Hunt v. Weatherbee*, 628 F. Supp 1097 (D. Mass 1986)                 16

*Klehr v. AO Smith Corp.,* 521 US 179 (1997)                          17

*McCleod v. Tribune Publishing Co*., 52 Cal 2d 543 (1959)             20

*Milkovich v. Lorain Journal Company,* 97 US 1 (1990)                 20

*National Organization for Women v. Scheidler,* 510 US 249 (1994)     18

*New York Times Co. v. Sullivan*, 376 US 254 (1964)                   19

*Rodoonich v. House Wreckers Union Local 95,*                    19
627 F. Supp 176 (SDNY 1985)

*Rotella v. Wood*, 528 US 549 (2000)                             17

*Sedina SPLR v. Imrex Co.,* 473 US 479 (1985)                   18

*United States v. Iannoti*, 729 F2d 213 (3d Cir.)               19
*cert. den.* 469 US 880 (1984)

*United States v. Provenzano*, 688 F2d 194, 200 (3d Cir.)       18
*cert. den*. 439 US 1071 (1982)

 *United States v. Scotto*, 641 F2d 47 (2d Cir. 1980),          18
 *cert. den.* 452 US 961 (1981).

*United States v. Turkette,* 452 US 576 (1981)                  18

## **Statutes**

FRCP Rule 8(a)(2)                                               passim
Internal Revenue Code 501(c)                                    passim

## **Other Authorities**

Statement by Law Firm Clare & Locke,                           16
LLP, concerning out of court settlement of
*Maajin Nawaz* case against SPLC,
clarelocke.com/our cases/maajin-nawaz/

Bible: Exodus 20:15-16                                          8

## Preliminary

This memorandum is hereby submitted on behalf of the Amici Curiae listed below in opposition to dismissal of the Complaint.

## The Amici and Their Interests

The Amici include organizations who have been the victims of actions, by one or more of the Defendants, that resemble their torts against the Plaintiff. These actions are frequently criminal and always unjust. The amici are: Fitzgerald Griffin Foundation, The Hon. Larry Pratt, the H.L. Mencken Club, Public Advocate of the United States, Inc., and Defend Life, Inc. of Maryland.

The SPLC is clearly anti-Christian and targets groups that oppose its left-wing agenda. It singles out and castigates organizations with any vestige of Christianity -- particularly those which seek to uphold the moral compass of society.

The Amici are outraged that the SPLC describes the views of Christians and reasonable people who do not agree with its leftist agenda as "hate speech".

The Amici are supporting this action to stop the Defendants from continuing their outrageous injustices to hundreds of individuals and organizations that they have unjustly designated as "hate groups" – and also to prevent the Defendants' "Intelligence Project" from future wrongdoings against others they might unjustly designate in the same manner.

The Amici are filing this memorandum because they believe that innocent persons and organizations should not be subject to theft, mail fraud, and other wrongdoing. The Amici are guided by the words of Exodus 20:15-16, "You shall not steal" and "You shall not bear false witness against your neighbor."

**The Fitzgerald Griffin Foundation** and its publishing arm, FGF Books, has as its mission the defense of Western Civilization and its chief foundation, Christianity. FGF publishes books and articles by writers who discuss the values of a well-ordered Judeo-Christian society. FGF was wrongly listed as a "hate group" by the SPLC in 2007 after a conference to release a posthumous collection of Dr. Samuel T. Francis's writings; and recently received the malicious, false, and baffling designation as a "white nationalist" group from the SPLC. The SPLC has repeated these lies in press releases for twelve years, greatly damaging FGF's reputation. In addition, after a nationwide press release by the SPLC in 2017, the home address of FGF's president was printed in the local newspaper, and its bank account was hacked and depleted.

The Fitzgerald Griffin Foundation is filing this brief in memory of Samuel T. Francis and Joseph Sobran, founding scholars of FGF who were maligned by the SPLC; and in solidarity with hundreds of individuals and groups who have been viciously defamed by the SPLC.

**The Hon. Larry Pratt** is a former member of the Virginia House of Delegates. Until his retirement last year, he was executive director of Gun Owners of America, a two-million member organization, which he was instrumental in establishing in 1975. In addition, he is the founder of English First, U.S. Border Control, and the Committee to Protect the Family. The SPLC has wrongfully attacked him for many years.

**The H.L. Mencken Club** is recognized by the Internal Revenue Service as a Section 501(c) (3) charitable organization. Founded in 2008 for independent-minded intellectuals and academics of the Right, it hosts annual conferences, open to the public, in Baltimore, home of the late newspaper columnist H. L. Mencken. The SPLC has falsely accused it of being a white nationalist organization. With this unjustified smirch on the organization's reputation, the Mencken Club became a target of outrageous defamation, causing a speechwriter at the White House to be fired after it was learned that he had spoken at the Club's yearly meeting. His speech, which was on educational standards, had no conceivable connection of any kind to "white nationalist" ideology, nor was there any speech that could be called "white nationalist" at that or any other meeting of the H.L. Mencken Club.

**Public Advocate of the United States, Inc.** is a Virginia corporation exempt from taxes under IRC 501(c)(4) and an advocate for Christian and family values. It has been listed by SPLC, without any conceivable justification, as a "hate group."

In 2012, the now-convicted terrorist Floyd Lee Corkin (by his own admission inspired by the SPLC's "hate groups" list) selected Eugene Delgaudio, Public Advocate's chief executive officer, as his number one target on a hit list of "hateful" people he intended to kill. A fortunate change in Mr. Delgaudio's schedule saved his life. (Corkin then went went to the Family Resrearch Council where he had planned to kill fifteen people. During a struggle with a security guard, who was shot by Corkin, the wounded guard disarmed Corkin who was arrested and subsequently sentenced to twentyfive years in prison.

The SPLC admits in its own official documents that it has engaged in defamation of Public Advocate and its officers. The harassment by the SPLC of Mr. Delgaudio and of Public Advocate's vice president was so severe that a United States District Judge ordered the SPLC to restrain from further actions. At least three totally frivolous criminal proceedings were started and later dismissed against Public Advocate and its officers. A frivolous judicial proceeding to remove one or more of its officers was also dismissed.

**Defend Life, Inc. of Maryland**, is the largest and most active pro-life organization in the Maryland, Washington, D.C, and northern Virginia metropolitan area. Since its founding in 1987, Defend Life has been spreading the culture of life and fighting the culture of death through pro-life education and activism. It sponsors about 50 events each year including a lecture series with internationally-renowned

speakers, and an annual week-long Face the Truth tour in 15 cities in the Baltimore, Maryland/D.C. area. Its bi-monthly 20-page newsletter is considered one of the best pro-life, pro-family magazines in the country.

Defend Life has joined this brief as an amicus in solidarity with other pro-life and pro-family groups who have been reviled by the SPLC.

## Summary of the Argument

The First Claim for Relief and Count seeks a declaration that the Southern Poverty Law Center, Inc. ("SPLC") is not entitled to its tax-exempt status. The Defendants seek dismissal primarily on the grounds that the IRS is not a party and this venue is not a proper place to sue the IRS. This case, however, does not seek to compel action by the IRS.

The Second and Third Claims for Relief (or Second and Third Counts) arise out of injuries to the Plaintiff's business and property by a pattern of racketeering by the Defendants including mail fraud, wire fraud, and multiple property crimes. . Defendants do not deny that they, through the enterprise, conducted a massive campaign of mailings including publications containing a number of false statements, such as that the Plaintiff is a "neo-Nazi" and that he "infiltrated" the City of Baltimore Department of Law. It is also not denied that the Plaintiff was fired as a consequence of the pattern of racketeering.

A RICO claim including allegations of false statements through the mail and interstate wire may be alleged without regard to whether such statements are defamatory or not. While a defamation claim arises upon publication, a RICO claim is not possible until there is a consequential injury to business or property. Although any claim is subject to the Constitution, the non-Constitutional procedural rights of

a defendant in a defamation claim are not imported into a claim that does not sound in defamation.

The Statute of Limitations for the RICO claim is four years and does not begin to run until there is injury to property or business. The Statute of Limitations for defamation claims, however, begins to run with publication (or at least from discoverable publication).

The Plaintiff has practiced law most of his life and did nothing to make himself a public figure. It is not alleged that this case had anything to do with his representation of the City of Baltimore before the Defendants induced his firing by the City. In any case, the Defendants made statements that were false and reckless or deliberately false, and it is clear that the Defendants had engaged in a massive pattern of such statements about others and widely distributed them by mail, costing their enterprise more than $3,000,000 in damages. The motion points to absolutely no possible basis for a belief that the allegations are true. These lies are not Constitutionally protected. Calling someone a Nazi is a statement of fact, not of opinion.

As a result of the racketeering Plaintiff lost his job. There is no requirement that the injury to him must be a racketeering type injury.

**I.** **The IRS is not a necessary party and this venue is not improper (First Claim for Relief and Count).**

This case does not seek to compel action by the IRS. It merely seeks to resolve the dispute between the Plaintiff and the SPLC as to whether the SPLC's exemption is improper. This is not a case in which there is an attempt to change the conduct of the IRS, and indeed this would be the improper venue if it did seek a court's order to the IRS to change its practices.

The case is full of triable disputed facts that bear on the question of the SPLC's tax exemption.

**II.**     **(Second and Third Claims for Relief and Counts). The Mere Fact that a Claim Alleges a Defamatory Statement Does Not Make the Claim a Disguised Defamation Claim or Preclude It.**

The mere allegation of one fact in a fraud claim (or a RICO claim based on a fraud claim) that constitutes defamation does not mean that a defamation claim is the victim's only remedy. A footnote in *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191 (8th Cir. 1994) makes it clear that defamation may be an element of a tortious interference claim, as long as the Constitutional requirements of a defamation claim are met. It is the Constitutional requirements that must be met, not the procedural ones.

A defamation claim arises upon publication. A RICO claim only arises when the victim is injured in his property or business (which may occur significantly after publication). Similarly, it would be absurd to assert that if a victim is injured in his business or property by a mail fraud that takes place more than a year prior to the RICO injury he is without remedy beyond implied or nominal damages of one dollar.

The Plaintiff lost his job, not because Defendants said something bad about him, hurt his feelings, and triggered presumed damage to him, but because they operated their enterprise through a pattern of predicate acts, which brought the enterprise's vast resources to bear. If Defendants Beirich and Potok had simply been

running a mimeograph machine in a basement, Plaintiff's injuries would have been minimal or merely nominal.

Similar predicate acts over a period of time are enough to get the question of a pattern of predicate acts to the jury. *H. J. Inc. v. Northwestern Tel. Co.*, 492 US 229, (1989).

In listing the many predicate acts that the Defendants claim are without merit on page 22 of their memorandum they cite making "intentionally false statements regarding Maajid Nawaz". Far from the way the Defendants try to minimize this matter, Mr. Nawaz and a foundation he controlled actually recovered over $3,000,000 in an out of court settlement. Clarelocke.com/our cases/maanjil-nawaz/.

The pattern, in addition to frauds, includes crimes against property, since the defendants relied on stolen property to harm the Plaintiff.

**III.     The Statute of Limitations in RICO Cases is Four years (Second and Third Claims for Relief and Counts).**

The Statute of Limitations for Plaintiff's Second and Third Claims for Relief is four years. *Agency Holding Corp. v. Malley-Duff & Associates, 483 US 143 (1987); Rotella v. Wood,* 528 US 549 (2000). It runs from discovery of the injury to property or business. *Klehr v. AO Smith Corp.,* 521 US 179 (1997). The mail frauds that establish the pattern of racketeering are covered by this four-year statute of limitations. The fact that that some or all of the mailings were also defamatory is not relevant since they were alleged in the complaint as mail frauds, not libels.

One libel is alleged in the Eighth Claim for Relief. It is not clear from the motion to dismiss whether the case was begun within one year of the publication of this libel or not. In any event, the case was begun within four years after it was placed in the mail.

**IV.    The Plaintiff is entitled to Recover under 18 USC 1962 pursuant to its Second and Third Claim for Relief (Second and Third Counts).**

The Complaint alleges at least six acts of mail fraud, one act of wire fraud, one act of commercial bribery, one act of interstate transport of stolen property, and one act of an indictable Alabama felony of receipt of stolen property. This is clearly a pattern of racketeering activity carried out through an association in fact (The Intelligence Project). It does not mater whether or not the Intelligence Project is legitimate or illegitimate. *United States v. Turkette*, 452 US 576 (1981).

In order to recover the Plaintiff must show an injury to him in his property or business. Lost wages are clearly such an injury. *Callan v. v. State Chemical Manufacturing Co.* , 584 F. Supp. 619 (ED Pa  1984); *Rodoonich v. House Wreckers Union Local 95,* 627 F. Supp 176 (SDNY 1985); *Hunt v. Weatherbee*, 628 F. Supp1097 (D. Mass 1986).

Plaintiff must also establish that the pattern of racketeering caused his injury. This does not have to be a "racketeering injury", *Sedina SPLR v. Imrex Co.,* 473 US 479 (1985). It is enough to establish that the injury was inflicted "through" the pattern of racketeering, if the harm required an association between the defendant and the enterprise. *United States v. Iannoti*, 729 F2d 213 (3d Cir.) *cert. den.* 469 US 880 (1984); *United States v. Provenzano*, 688 F2d 194, 200 (3d Cir.) *cert. den*. 439 US 1071 (1982); *United States v. Scotto*, 641 F2d 47 (2d Cir. 1980), *cert. den.* 452 US 961 (1981). There is no requirement that the defendants' motives be economic. *National Organization for Women v. Scheidler*, 510 US249 (1994).

But for the pattern of theft and handling stolen property and the pattern of mail fraud, as well as the Enterprise's ability to reach a mass market, the Plaintiff would not have been injured.

**V.    There is no Constitutional Protection for the Torts against the Plaintiff Alleged in the Second, Third, Fourth and Eighth Claims for Relief and Counts.**

The Second, Third, Fourth, and Eighth claims allege not only false statements, but also theft and similar crimes damaging Plaintiff. This alone should demonstrate that the torts of the Defendants go well beyond expression.

The protection of *New York Times Co. v. Sullivan*, 376 US 254 (1964), on which the Defendants rely, applies only to public officials, which none of the parties are. Moreover *Gertz v. Robert Welch, Inc*., 418 US 94 (1974) makes it clear that its protections do not apply to private persons unless they create liability by deliberately taking part in a public controversy.

Plaintiff, after honorable service in the United States Army, went to law school and then practiced law for most of his adult life. There is no reason to believe that he ever did anything to make himself a public figure.

Paragraph 113 of the Complaint clearly alleges that the Defendants published a statement that the Plaintiff is a "neo-Nazi" and that he infiltrated the law department of the City of Baltimore. It is undisputed that, after a career of practicing law, the Plaintiff was first retained and later hired as a lawyer by the City's law Department. Plaintiff was simply a good lawyer who did not deserve to be dragged into the public view.

Paragraph 189 of the Complaint alleges that the Defendants knew that their statements were false, or recklessly failed to inquire whether they were true or not. The motion to dismiss utterly fails to cite a single reason to believe that the

statements were possibly true. There is no privilege to lie. The factual allegations of the Complaint are presumed to be true. *Ashcroft v. Iqbal*, 556 US  662 (2009).

Obviously, a defendant cannot create bootstrap protection by falsely alleging that a defendant voluntarily made himself a public figure.

While (at least for the most part) mere opinion (such as that someone is extreme, racist, or fascist [unless there is a specific Fascist Party named]) are not actionable, statements that someone is a Communist or a Nazi are statements of fact and are actionable. It has even been held that falsely stating that someone was endorsed for office by a Communist newspaper is actionable. *McCleod v. Tribune Publishing Co*., 52 Cal 2d 543 (1959). Calling someone a Communist in the Vietnamese community is not privileged and can be compensated by large awards *Duc Tan v. Le*, 259 P. 3d 1108 (Washington 2011) and same case as No. 86021 (May 9, 2013); *Phan v. Le*, (2007) certiorari to Minnesota Supreme Court denied 552 US 1320 (2008).  Calling someone a Nazi is clearly more harmful than calling him a Communist.

There is even a possibility that a false statement of opinion may be a predicate act. *Milkovich v. Lorain Journal Company,* 97 US 1 (1990).

**VI.     The Defendants have Completely Failed to Set Forth any grounds for the Dismissal of the Fifth and Sixth Claims for Relief and Count.**

Count V. The Plaintiff has adequately alleged that he was a third party beneficiary of a contract between NA and Dillaway. Under FRCP Rule 8(a)(2), it is not the duty of a Plaintiff to set forth evidence in a Complaint, especially if the Complaint is fully understandable without the evidence. Instead of presenting evidence, or even a naked allegation, that he was not such a third party beneficiary, the Defendants now argue that the Plaintiff must plead evidence. This is not what FRCP 8(a)(2) says.

Count VI. Dismissal of this claim is sought by Defendants for the same invalid reason they seek dismissal of Claims II, III, IV and V. Claim VI is also opposed for failure to plead evidence, which is not required by FRCP8(a)(2).

### VII.   Unjust Enrichment Does Not Require that Cash Pass from the Plaintiff to the Defendants. (Claim for Relief and Count VII)

This Claim arises out of the continuing profits made by the Defendants by exploitating of the Plaintiff for profit as a sort of boogeyman by constant republications of the Defendants' libels against him. Defendant's motion misses the point by alleging that the claim can only cover cash that passed from Plaintiff to Defendants, and not simply by their financial exploitation of the Plaintiff.

### Conclusion

The motion should be denied.

Respectfully submitted,

/s/Charles G. Mills
Charles G. Mills
Attorney for Amici Curiae

**Certificate of Service**

I hereby certify and affirm that on April 10, 2019 I served the foregoing Memorandum of Law on the Plaintiff, pro se, and Chad R. Bowman and Elizabeth R. Connell, attorneys for the Defendants through this Courts Electronic Case Filing System.

April 10, 2019

/s/ Charles G. Mills
Charles G. Mills

**Certificate**

I hereby certify and affirm that all counsel in this case were provided with a draft of this memorandum, containing exactly the same arguments as the final version, that all counsel were given an opportunity to inform me if they were going to object to its filing and none of them answered in the affirmative.

April 10, 2019

/s/ Charles G. Mills
Charles G. Mills